UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAUREN S. KRUSKALL,<br><br>        Plaintiff,<br><br>v.<br><br>SALLIE MAE SERVICE, INC.,<br>SLM CORPORATION and John Does,<br><br>        Defendants. | Civil Action No.: 15-cv-11780 |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                                                             March 14, 2016

### I.  Introduction

Plaintiff Lauren S. Kruskall ("Kruskall") has filed this lawsuit against defendants Sallie Mae Service, Inc., ("Sallie Mae"), SLM Corporation ("SLM") and various Does alleging violations of 47 U.S.C. § 227 *et seq.* and 15 U.S.C. § 1692 *et seq.*, bad faith and intentional infliction of emotional distress.  D. 1-7.  SLM has moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  D. 5.  For the reasons stated below, SLM's motion is ALLOWED.

### II.  Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (internal citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103

(1st Cir. 2013). The Court performs a close reading of the complaint to distinguish the factual allegations from the conclusory legal allegations. Id. Factual allegations must be accepted as true, while legal conclusions are not entitled to credit. Id. Second, the Court assesses whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (internal quotation mark omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009)).

The Court will dismiss a pleading that fails to include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557) (alteration in original). "This context-specific inquiry does not demand 'a high degree of factual specificity.'" García-Catalán, 734 F.3d at 103 (quoting Grajales v. Puerto Rico Ports Auth., 682 F.3d 40, 47 (1st Cir. 2012)).

The Court recognizes that *pro se* litigants are generally held "to a standard of pleading less stringent than that for lawyers." Green v. Com. of Mass., 108 F.R.D. 217, 218 (D. Mass. 1985) (citing Sissbaro v. Warden, Mass. State Penitentiary, 592 F.2d 1, 2 (1st Cir. 1979)). Nevertheless, *pro se* litigants must comply with procedural and substantive law. See Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).

### III. Factual Background

All of the allegations recounted here are taken from the operative complaint, unless otherwise noted, and are accepted as true for the purposes of this motion. D. 1-7. Kruskall opens the complaint by identifying the Defendant as "Sallie Mae Service, Inc, also doing business as SLM Corp." Id. at 2. Throughout the complaint Kruskall refers to "Defendant"

without differentiating between Sallie Mae and SLM.  See generally D. 1-7.  The complaint describes "Defendant"[1] as a Delaware corporation with headquarters at 12061 Bluemont Way, Reston, Virginia.  Id. ¶ 2.  According to Kruskall, Sallie Mae, through its subsidiaries, provides loans and loan servicing throughout the United States.  See id.  Kruskall further alleges that Sallie Mae's primary business "is to originate and hold student loans by providing funding, delivery, and servicing support for education loans."  Id.

Kruskall alleges that beginning in or around 2006 she took out a number of loans with "Defendant" to cover the cost of her education.  Id. ¶ 5.  Prior to and during her loan period, "Defendant" assisted Kruskall with her application and retrieval of private loan education funding.  Id. ¶ 7.  Specific unknown individuals representing "Defendant" recommended funding appropriate for Kruskall's circumstances.  Id.  During the course of the loan, Kruskall informed "Defendant" that her loan payments were burdensome.  Id. ¶ 8.  According to Kruskall, at or around this time, "Defendant" modified elements of the loan contracts, including but not limited to the addition of forbearance fees and other financial penalties and scheduling and interest rate changes.  Id.

In addition, over the course of the loan, "Defendant" allegedly engaged in "brute force" phone calls, automated phone calls and other communication tactics towards Kruskall.  Id. ¶ 9. Kruskall alleges that these calls were harassing in nature, monopolized the phone line, occurred at all hours and were placed within as little as fifteen minutes of each other.  Id.  Because many of these calls were prerecorded, Kruskall was unable to request that the calls end or voice her complaints to a "real person."  Id.  As alleged, when a real person did call, his or her command of the English language was often not sufficient to have a significant conversation regarding

---

[1] The Court uses quotation marks to indicate that it is unclear from the complaint whether Kruskall is referring to Sallie Mae or SLM.

Kruskall's finances. Id. "Defendant's" calls to Kruskall's cellular phone via the automatic telephone dialing system used an artificial or prerecorded voice. Id. ¶ 10. These phone calls were not made for emergency purposes. Id. ¶ 11. Kruskall further alleges that she filed a cease and desist order against "Defendant." Id. ¶ 12. The order was systematically ignored. Id.

According to Kruskall, in or around 2011, "Defendant" admitted to "excessive contact" and disregard for the cease and desist order. Id. ¶ 13. As representatives of the "Defendant," John Kane and other unknown individuals offered Kruskall a written settlement for her loans. Id. During negotiations with "Defendant," Kruskall provided additional information regarding violations made by various unknown individuals representing the corporation and mentioned potential litigation. Id. ¶ 14. John Kane, Lisa Dowling and the other unknown individuals then ceased all contact with Kruskall. Id.

At the outset and for the sake of clarity, the Court acknowledges certain challenges SLM raises to Kruskall's characterizations of the parties. SLM contends that SLM is a former corporate parent of Sallie Mae and SLM was never the lender or servicer of Kruskall's loans. D. 6 at 5 n.1. SLM asserts that Sallie Mae has been misidentified, D. 10 at 4, in that Sallie Mae is now known as Navient Solutions, Inc. ("Navient"). Id. at 4-5. As of June 4, 2015, SLM stated that Navient had not been served with process. Id. at 5 n.1. SLM represented during the state court proceedings in this case that Navient is the current servicer for three student loans disbursed to Kruskall in 2006 and 2007. D. 7 at 33, 52; D. 7-1 at 6. While the Court recognizes the challenges SLM raises to Kruskall's characterization of the relationship between SLM and Sallie Mae, the Court must, in its consideration of the motion to dismiss, accept Kruskall's allegations as true. However, as this motion to dismiss is brought by SLM, the Court evaluates Kruskall's allegations and claims in so far as they are raised against SLM.

**IV.     Procedural History**

Kruskall instituted this action on August 7, 2014 in the Norfolk Superior Court.  D. 1-3. SLM subsequently removed the case to this Court.  D. 1.  SLM later moved to dismiss.  D. 5. The Court heard the parties on the pending motion and took the matter under advisement.

**V.      Discussion**

    **A.     Kruskall Has Not Adequately Pleaded a Claim under the Telephone Consumer Protection Act (Count I)**

The Telephone Consumer Protection Act ("TCPA") serves to "protect consumers from the 'proliferation of intrusive [telemarketing] calls to their homes.'"  Golan v. Veritas Entm't, LLC, 788 F.3d 814, 819 (8th Cir. 2015) (alteration in original) (quoting Mims v. Arrow Fin. Servs., LLC, 132 S.Ct. 740, 745 (2012)).  Thus, the TCPA prohibits the initiation of "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . for which the called party is charged for the call."  47 U.S.C. § 227(b)(1)(A)(iii).  The term "automatic telephone dialing system" ("ATDS") is defined as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers."  47 U.S.C. § 227(a)(1).

To sustain a TCPA claim, a plaintiff must plead that (1) the defendant called a cellular telephone (2) the call was made using an ATDS and (3) the call was made without the recipient's prior express consent.  Jones v. NCO Fin. Servs., No. 13-cv-12101-DJC, 2014 WL 6390633, at *2 (D. Mass. Nov. 14, 2014) (citing Jones v. FMA All. Ltd., 978 F. Supp. 2d 84, 86 (D. Mass. 2013)).  Although "alleging specific details regarding a defendant's use of an ATDS can pose a challenge prior to conducting discovery," courts nonetheless have held that "a plaintiff must

plead more than the bare allegation that an ATDS was used." Id. In light of these tensions, a plaintiff is permitted to "rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that an ATDS was used." Id. (internal quotation marks and citation omitted). A plaintiff may describe "the robotic sound" of the voice making the call, the "lack of human response" when trying to converse with the caller or the "generic content" of the message received. Id. (citing Johansen v. Vivant, Inc., No. 12-cv-7159, 2012 WL 6590551, at *3 (N.D. Ill. Dec. 18, 2012)).

Kruskall alleges that "Defendant" initiated "automated phone calls" that "monopolized the phone line, came in at all hours, and were placed within as little as 15 minutes of each other." D. 1-7 ¶ 9. Kruskall alleges that many of these calls were "prerecorded," which prohibited her from "voic[ing] her complaints to a real person." Id. Kruskall further alleges that these calls were placed to her cellular telephone through an "automated telephone dialing system [that] used 'an artificial or prerecorded voice' as described in 47 U.S.C. § 227(b)(1)(A)." Id. ¶ 10.

These allegations are insufficient to survive a motion to dismiss as against SLM. First, Kruskall fails to create a reasonable inference that the calls were made by the defendant who challenges the lawsuit with its motion, SLM. Kruskall does not specifically allege who made the calls. Second, she fails to create a reasonable inference that the calls were made using an ATDS. Kruskall does not allege sufficient facts regarding "the nature or content of the calls . . . or other facts that would allow the Court to make a reasonable inference" that the calls were made using an ATDS. Jones, 2014 WL 6390633, at *2. In assessing the sufficiency of Kruskall's allegations, the analysis in Jones v. NCO Financial Services is instructive. In Jones, the plaintiff alleged that the defendants called him using "robo type phone calls" around 700 times over two years and that the defendants called him using an "automated dialing system" sometimes 7 to 10

times per day. Id. (internal quotation marks omitted). This court held that such allegations were insufficient to create a "reasonable inference" that the calls were made using an ATDS and granted the defendant's motion for judgment on the pleadings. Id. at *2-3. Kruskall's allegations regarding the use of an ATDS are similar to those in Jones and are likewise insufficient to adequately allege that an ATDS was used. Moreover, where a plaintiff and defendant have a business relationship through which the plaintiff provided her phone number to the defendant, that relationship "raise[s] an inference of personal, rather than automated, interactions," though it "do[es] not prove that an ATDS was not used." Gragg v. Orange Cab Co., Inc., 942 F. Supp. 2d 1111, 1114 (W.D. Wash. 2013). Based on Kruskall's allegations that "she took out a number of loans with Defendant," D. 1-7 ¶ 5, such a business relationship exists here and supports the inference that any alleged calls SLM made were personal rather than automated even if it is not dispositive of the issue regarding use of an ATDS. See Gragg, 942 F. Supp. 2d at 1114. However, even if a plaintiff "need not plead 'specific technical details' regarding [the defendant's] use of an ATDS, . . . they must at least describe, in laymen's terms, the facts about the calls or the circumstances surrounding the calls that make it plausible that they were made using an ATDS." Baranski v. NCO Financial Systems, Inc., No. 13-cv-6349 (ILG) (JMA), 2014 WL 1155304, at *6 (E.D.N.Y. March 21, 2014).

Even assuming *arguendo* that Kruskall has at least make a plausible allegation that an ATDS was used, she has failed, as previously noted to connect same to this particular defendant, SLM, but has also failed to allege sufficiently that SLM contacted her without her prior consent. To sustain a TCPA claim, a plaintiff must plead that any communication undertaken by the defendant using an ATDS was done without the plaintiff's prior express consent. Jones, 2014 WL 6390633, at *2. Although Kruskall alleges that she filed a cease and desist order against

"Defendant," which was systematically ignored and, she further alleges, "Defendant" later admitted "excessive contact," D. 1-7 at ¶¶ 12-13, she does not allege when such order was sought and entered and the complaint does not allege, even assuming that these allegations are true, whether SLM was the entity that ignored same.  For all of these reasons, Count I is dismissed without prejudice.

### B. Kruskall Has Not Adequately Stated a Claim under the Fair Debt Collection Practices Act (Count II)

The purpose of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, is "to protect debtors from abusive debt collection practices" and regulate the actions of debt collectors.  Chiang v. Verizon New England Inc., 595 F.3d 26, 41 (1st Cir. 2010). Accordingly, to prevail on a FDCPA claim, a plaintiff must prove "that (1) [s]he was the object of collection activity arising from consumer debt, (2) the defendant is a debt collector within the meaning of the statute, and (3) the defendant engaged in a prohibited act or omission under the FDCPA."  Krasnor v. Spaulding Law Office, 675 F. Supp. 2d 208, 211 (D. Mass. 2009).  The FDCPA defines "creditor" as any person who extends credit and to whom a debt is thus owed. 15 U.S.C. § 1692a(4).  A "debt collector" is defined as any individual in a business that primarily engages in the collection of debts owed to a third party.  15 U.S.C. § 1692a(6).  Any person collecting or attempting to collect a debt that the person originated will be considered a creditor, and not a debt collector.  15 U.S.C. § 1692a(6)(F).

Kruskall does not adequately plead a FDCPA claim.  First, Kruskall's allegation that SLM generated her loans, D. 1-7 ¶ 5, is fatal to her claims under the FDCPA.[2]  "Creditors collecting on their own accounts are generally excluded from the [FDCPA's] reach."  Chiang,

---

[2] SLM disputes that it had a loan with Kruskall, but argues that even if it did, Kruskall's claim would fail because "the FDCPA does not apply to a party seeking to collect its own debt." D. 6 at 13.

8

595 F.3d at 41 (citing <u>Arruda v. Sears, Roebuck & Co.</u>, 310 F.3d 13, 22 n.4 (1st Cir. 2002) (affirming grant of summary judgment because plaintiff failed to sufficiently allege that defendant was a debt collector)).  Since Kruskall alleges that SLM originated the loans, SLM is a "creditor" and not a "debt collector" for purposes of the FDCPA.  <u>See</u> 15 U.S.C. § 1692a(6)(F).  Where a plaintiff has failed to allege that the defendant is a debt collector, the FDCPA claim is properly dismissed.  <u>See, e.g.</u>, <u>Lee v. BAC Home Loans Servicing, LP</u>, No. 10-cv-12226-GAO, 2013 WL 212615, at *3 (D. Mass. Jan. 18, 2013) (dismissing FDCPA claim where defendant was not a debt collector); <u>Gibbs v. SLM Corp.</u>, 336 F. Supp. 2d 1, 14 (D. Mass. 2004) (same).  Second, Kruskall does not allege that the phone calls allegedly made by SLM were made for the purpose of collecting on her loans.  <u>See</u> D. 1-7 ¶¶ 9-11.  Where a plaintiff has failed to allege that the defendant's communications were aimed at collecting a debt from the plaintiff, the FDCPA claim is properly dismissed.  <u>See</u> <u>Fortin v. Ocwen Loan Servicing, LLC</u>, No. 15-cv-122-JNL, 2015 WL 5693115, at *4 (D.N.H. Sept. 29, 2015) (dismissing FDCPA claim where defendant's alleged communications to plaintiff "[could not] be construed as attempts to collect a debt" from plaintiff).

Although in certain limited circumstances a creditor will be considered a debt collector, and thus subject to the FDCPA, Kruskall has not alleged any such circumstances.  Where a party attempting to collect its own debt "uses any name other than [its] own which would indicate that a third person is collecting or attempting to collect such debts," it will be considered a debt collector.  15 U.S.C. § 1692a(6).  In the complaint, Kruskall does not allege that SLM used names other than its own that led her to believe that someone other than SLM was attempting to collect on her loans.  To the extent that Kruskall now argues that she meant to raise this allegation by stating that "Defendant" has "several monikers in use, some of which were used

when contacting the Plaintiff for the purposes of debt collecting," D. 8 at 6, the Court cannot consider that assertion because it is raised in the opposition and "a [p]laintiff may not amend its pleadings in the opposition memorandum." Portfolioscope, Inc. v. I-Flex Sols. Ltd., 473 F. Supp. 2d 252, 256 (D. Mass. 2007); see Deren v. Dig. Equip. Corp., 61 F.3d 1, 1 (1st Cir. 1995) (noting that the court must "take the facts as alleged in the complaint"); In re Tyco Intern., Ltd. Multidistrict Litig., No. 02-cv-1335-PJB, 2004 WL 532193, at *1 (D.N.H. Mar. 16, 2004) (stating that the court cannot take into account claims, facts or allegations found outside of the complaint). For the same reason, to the extent that Kruskall intended to raise Dodd-Frank Act claims in the opposition, D. 8 at 4, the Court cannot consider those claims. Accordingly, Count II is dismissed.

### C. Kruskall Has Not Adequately Pleaded a Fraud Claim (Count III)

Although labeled as "bad faith," Count III sounds in fraud. "A claim 'sounds in fraud' if fraud lies at the core of the action." Declude, Inc. v. Perry, 593 F. Supp. 2d 290, 297 (D. Mass. 2008) (citing Shaw v. Dig. Equip. Corp., 82 F.3d 1194, 1223 (1st Cir. 1996)). Whether a claim is treated as fraud is not governed by the title of the claim but by the allegation of fraud. See Shaw, 82 F.3d at 1223 (citing Haft v. Eastland Fin. Corp., 755 F. Supp. 1123, 1133 (D.R.I. 1991)). It is well-established that "[t]he hallmarks of fraud are misrepresentation or deceit." Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc., 215 F.3d 182, 191 (1st Cir. 2000). Kruskall alleges that SLM "made misrepresentations with the goal of getting [her] to engage in loans for egregious and unrealistic payback amounts" and "made misrepresentations to [her] that entering into multiple forbearance payments would benefit her financially." D. 1-7 ¶¶ 32-33. Kruskall also alleges that SLM "was either aware of the false representations . . . yet made them anyway to gain a monetary contract, or it made the . . . representations in a reckless manner." Id. ¶ 34.

Kruskall thus alleges misrepresentation and deceit and so her claim for "bad faith" is properly treated as a claim for fraud. See Ed Peters Jewelry Co., Inc., 215 F.3d at 191; see also Shaw, 82 F.3d at 1223.

To sufficiently plead a common law claim for fraud, a plaintiff must prove that (1) the defendant made a false representation of material fact (2) the defendant had knowledge of the falsity of the statement (3) the defendant acted with the intent to induce the plaintiff to act upon the statement (4) the plaintiff relied upon the statement and (5) the plaintiff suffered as a result. Taylor v. Am. Chemistry Council, 576 F.3d 16, 31 (1st Cir. 2009) (quoting Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458 (2002)). Pursuant to Fed. R. Civ. P. 9(b), claims of fraud must be pleaded with particularity. "This standard means that a complaint must specify the time, place, and content of an alleged false representation." U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 45 (1st Cir. 2009) (internal quotation marks and citation omitted).

Kruskall has failed to adequately plead the particularity required of a fraud claim. She does not allege a specific misrepresentation. Instead, she states in a conclusory fashion that SLM "made misrepresentations." D. 1-7 ¶¶ 32-34. Kruskall alleges neither when nor where any alleged misrepresentation occurred. Finally, Kruskall does not allege that she relied upon the statements or that she suffered injury as a result of that reliance. Due to these deficiencies, Kruskall's fraud claim must be dismissed. See, e.g., Lippincott v. JPMorgan Chase Bank, N.A., No. 14-cv-14400-GAO, 2015 WL 4380584, at *2 (D. Mass. July 16, 2015) (granting motion to dismiss fraud claim where the complaint lacked the details to "satisfy Rule 9").

To the extent that Kruskall intended to raise a claim for negligent misrepresentation, that claim also fails. For pleading purposes, "misrepresentation is considered a species of fraud." Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004). To prevail on a

negligent misrepresentation claim, a plaintiff must show that (1) the defendant made a false statement in the course of business (2) the defendant failed to exercise reasonable care in making the statement and (3) the plaintiff reasonably relied upon the statement as true and suffered loss. See Gossels v. Fleet Nat. Bank, 453 Mass. 366, 372 (2009). Neither knowledge that the statement was false nor evidence of intent to deceive are necessary. See Kitner v. CTW Transp., Inc., 53 Mass. App. Ct. 741, 749 (2002). Instead, "[g]enerally, when analyzing negligent misrepresentation claims, Massachusetts courts ask whether the speaker was negligent in failing to discover the falsity of his or her statements." Robert E. Ricciardelli Carpet Serv., Inc. v. Home Depot U.S.A., Inc., 679 F. Supp. 2d 192, 210 (D. Mass. 2010) (internal citation omitted).

Kruskall has failed to meet this burden.[3] As discussed, Kruskall's allegations regarding misrepresentations are exceedingly sparse. Even putting aside the requirements of Rule 9(b) as to any claim of negligent misrepresentation, Kruskall still does not adequately allege a particular false statement of material fact as to this claim. The absence of that allegation is fatal to her claim. See, e.g., Rogers v. Nstar Elec., 389 F. Supp. 2d 100, 110 (D. Mass. 2005) (allowing motion to dismiss negligent misrepresentation claim where plaintiff did not allege a specific material misrepresentation). Even if Kruskall had sufficiently alleged a misrepresentation, Kruskall's failure to plead that she reasonably relied upon any false representation is also fatal to her claim. See, e.g., Cagnina v. Philadelphia Ins. Companies, 61 F. Supp. 3d 192, 194 (D. Mass.

---

[3] Court are split on whether to apply the heightened pleading standard of Fed. R. Civ. P. 9(b) to claims of negligent misrepresentation. See, e.g., AcBel Polytech, Inc. v. Fairchild Semiconductor Int'l, Inc., No. 13-cv-13046-DJC, 2014 WL 4656608, at *10 (D. Mass. Sept. 12, 2014) (noting that "there is a split in authority as to whether Fed R. Civ. P. 9(b), which requires plaintiffs to plead some claims with particularity, even applies to claims for negligent misrepresentation under Massachusetts law"); Gardner v. Simpson Fin. Ltd. P'ship, No. 09-cv-11806-FDS, 2012 WL 1109104, at *4 n.12 (D. Mass. Mar. 30, 2012) (noting that "[i]t is unclear whether Rule 9(b) always applies to a claim of negligent misrepresentation"). Therefore, out of an abundance of caution, the Court does not apply the heightened pleading standard in assessing Plaintiffs' claim of negligent misrepresentation.

2014) (allowing motion to dismiss where "plaintiff ha[d] not sufficiently alleged that she detrimentally relied on th[e] statements"). Finally, Kruskall has not adequately alleged that she suffered damages as a result of SLM's misrepresentations. For all of these reasons, Count III is dismissed without prejudice.

> **D. Kruskall Has Not Adequately Pleaded a Claim of Intentional Infliction of Emotional Distress (Count IV)**

To make out a claim for intentional infliction of emotional distress, a plaintiff must show (1) that the defendant intended, knew, or should have known that its conduct would cause emotional distress (2) that the conduct was extreme and outrageous (3) that the conduct caused emotional distress and (4) that the emotional distress was severe. See Polay v. McMahon, 468 Mass. 379, 385 (2014) (citing Howell v. Enter. Publ. Co., 455 Mass. 641, 672 (2010)). The bar is set "very high" for a plaintiff seeking to make out a claim for intentional infliction of emotional distress. Id. (internal quotation mark omitted) (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996)). A plaintiff who alleges "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" will not meet her burden, nor will a plaintiff who alleges, without more, only "tortious or even criminal" intent. Id. (quoting Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997)). To prove the requisite extreme and outrageous conduct, a plaintiff must show that the conduct "go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." Id. at 386 (alterations in original) (internal quotation marks omitted) (quoting Roman v. Trs. of Tufts Coll., 461 Mass. 707, 718 (2012)).

Kruskall alleges that SLM "us[ed] threatening language and/or intimidations," including, but not limited to, threats to "seiz[e] . . . [Kruskall's] personal bank accounts, arrest . . . [Kruskall], separat[e] . . . [Kruskall] from her family, and [have] representatives show[] up

13

unannounced at [Kruskall's] place of residence." D. 1-7 ¶ 39. Kruskall also alleges that SLM's actions were made "with the intent of causing [Kruskall] the belief she would be harmed." Id. ¶ 40.

Even if these allegations amount to extreme and outrageous conduct, Kruskall has failed to allege that SLM's actions caused emotional distress or that the emotional distress was severe. Thus, Kruskall's claim for intentional infliction of emotional distress is properly dismissed without prejudice. See, e.g., McHenry v. United States, 141 F.3d 1149, 1998 WL 121846, at *1 (1st Cir. 1998) (affirming dismissal of intentional infliction of emotional distress claim where plaintiff "failed to allege that [defendant's] conduct caused severe emotional distress"); Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (affirming dismissal of intentional infliction of emotional distress claim where plaintiff did not "even attempt[] to plead severe distress").

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS SLM's motion to dismiss. D. 5. Because the Court cannot conclude that it would be futile for Kruskall to amend her complaint to add factual allegations to support her claims for alleged violation of the TCPA, fraud and/or intentional infliction of emotional distress, the dismissal as to those three claims is without prejudice. The dismissal of her FDCPA claim is with prejudice.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge