UNITED STATES SUPERIOR COURT
NORFOLK COUNTY, MASSACHUSETTS
Case No.: NOCV2014-01091 -CIV-

LAUREN S. KRUSKALL,

           Plaintiff,

vs.

SALLIE MAE SERVICE, INC, SLM CORP
                And DOES listed below.

           Defendant.

_____/

## PLAINTIFF'S AMENDED COMPLAINT FOR DAMAGES

    Plaintiff, Lauren S. Kruskall ("Plaintiff") has amended her complaint as follows against the Defendant, Sallie Mae Service, Inc, also doing business as SLM Corp., ("Defendant"). This amendment as requested by court provides additional specificity into the claims and harms of the plaintiff.

## PARTIES

1.    Plaintiff is, and at all times mentioned herein was, an individual citizen of the State of Massachusetts, who resides in Dover, Massachusetts, with the intention of maintaining her domicile in the state of Massachusetts.

2.    Defendant is a Delaware corporation that maintains its headquarters at 12061 Bluemont Way, Reston, Virginia. Sallie Mae, through its subsidiaries, provides education finance throughout the United States, including Norfolk County. Its primary business is to

originate and hold student loans by providing funding, delivery, and servicing support for education loans.

## II. JURISDICTION AND VENUE

3.    Jurisdiction is proper in the United States Superior Court for Norfolk County, Massachusetts pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a), because Defendant is a corporation that is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced, and because Defendant's contacts with this District are sufficient to subject it to personal jurisdiction. Venue is also proper because Plaintiff has resided in this County at all times relevant to these claims such that a substantial part of the events giving rise to the claims occurred in this County.

## III. FACTUAL ALLEGATIONS

4.    At all times relevant, Plaintiff was an individual residing in the State of Massachusetts. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10).

5.    Beginning in or around 2006, Plaintiff enrolled at UCLA extension school in Los Angeles, CA. She signed up for several classes in the field of acting. These classes were not part of any formal degree program, and Plaintiff had no previous experience in the field of acting. In order to pay for the schooling, she contacted Defendant's company about loans

6.    Defendant is, and at all times mentioned herein was, a corporation and a "person", as defined by 47 U.S.C. § 153(10).

7. Over the phone, sales representatives working for the Defendant encouraged Plaintiff to acquire funding.  These representatives made statements to Planitiff about how great the classes at UCLA sounded, and about how the Defendant's's company could help Plaintiff achieve a wonderful career.  The representatives also touted the low interest rates their company provided, and easy payback plans.  Within hours, Plaintiff received a loan for over 30k from the Defendant.  After this initial loan, representatives of the Defendant contacted plaintiff and encouraged her to get additional funding.  Plaintiff received at least three loans from the Defendant, totaling in or around 80k dollars.  Each subsequent loan had an increased interest rate.

8. During the course of the loans, Plaintiff made payments as stipulated.  However, Plaintiff was not able to procure work in the field of acting, or work in an alternate field with income adequate to cover the payments on the loans.  Plaintiff communicated with Defendant about burdensome loan payments.  At, or around this time, representatives of Defendant, were no longer so positive about Plaintiff's education or the ease of repayment.  However, these representatives encouraged Plaintiff to use a forbearance plan.  The plan involved paying a fee from $25 - $150 per forbearance, which modified the contract and changed the loan schedule.  These forbearance periods also increased interest rates.  Representatives continued to contact Plaintiff and encourage forbearance periods.  The Plaintiff paid several forbearance fees, as well as regular monthly payments. The total payoff of the loan did not go down, it when up to almost 100k. Monthly payments had more than doubled.

9. The Plaintiff was not able to find work and ceased making payments. Representatives began to call Plaintiff every day, at least three times per day, and up to 10 times per day. Many of these representatives were from overseas and unintelligible. They would often call in the middle of the night, because these were business hours overseas. The Defendant also used an automated calling system in a "brute-force" manner. This system used an electronic voiceover leaving repeated, identical, robotic messages on the Plaintiff's phone. Sometimes the electronic messages were left in as little as 15 minutes of each other. Because these calls were prerecorded and came from blocked numbers, Plaintiff had no ability to request that the calls end. These calls would sometimes demand payment, sometimes offer more forbearance for a fee, and sometimes not state their purpose at all.

10.   The automated telephone calls placed by Defendant to Plaintiff's cellular telephone via the automatic telephone dialing system used "an artificial or prerecorded voice" as described in 47 U.S.C. § 227(b)(1)(A).

11.   Defendant did not make telephone calls to Plaintiff's cellular phone "for emergency purposes" utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," per the exception to violation as described in 47 U.S.C. § 227(b)(1)(A).

12.   Plaintiff sought legal advice and then filed a verbal, followed by a written cease and desist order against Defendant. These were both ignored, and the calls continued.

13.   On or around 2011, after Plaintiff spent hundreds of hours climbing the chain of command at the Defendant's company, leaving hundreds of messages, plaintiff reached John Kane, an employee of the Defendant who worked in the corporate office. Kane

admitted to excessive contact and disregard for the cease and desist orders on behalf of the defendant. In conjunction with this admission, Kane offered a written settlement of 50k for the loans.

14.    During further settlement negotiations, Plaintiff provided Kane information regarding previous lawsuits with individual and class action plaintiffs over forbearances with the Defendant. John Kane, as well as all representatives in the corporate office immediately ceased contact with the Plaintiff.  Plaintiff attempted to call and email them several times with no response, and was told to write their legal department.  So Plaintiff filed this suit.

### HARMS SUFFERED BY PLAINTIFF

15.    In or around 2006, the same time the Plaintiff engaged in loans with the Defendant, the Defendant was concerned about its image to various investors.  At this time, the Defendant engaged in unlawful practices listed below to make itself as attractive to these investors as possible.  Although Defendant more than doubled its financial portfolio between 2007 and 2008, many individual borrowers were affected adversely by the behavior, including the Plaintiff. See, *Burch et al v. SLM Corporation et al., 1:08-cv-01029, NY*

i. Defendant relaxed its underwriting standards and loaned billions of dollars to borrowers with low credit scores and other high risk borrowers who attended part-time, correspondence, or for-profit schools.

ii. Defendant then moved as many problem loans as possible into forbearance to hide the

5

true number of private loans in delinquent or default status, in violation of Generally Accepted Accounting Principles and Securities and Exchange Commission regulations.

16. Defendant employed an electronic voiceover phone system in an attempt to efficiently collect the debts of borrowers now significantly increased by the forbearance programs. See: *Mark A. Arthur, et al. v. Sallie Mae Inc., No. 10-0198, W.D. Wash.*

17. <u>Plaintiff suffered substantial harm to her credit from Defendant's predatory loans.</u> Plaintiff is no longer trying to enter the acting field, and has started law school. Because of negative history on Plaintiff's credit profile caused by Defendant, Plaintiff was unable to borrow loans for law school beyond the government-guaranteed Stafford loan.

18. Plaintiff was accepted at several first tier law schools, but she was only able enroll in a third tier law school because Plaintiff was unable to borrow loans to finance the additional cost of a first tier law school's tuition.

19. Plaintiff applied for housing near school in a middle class neighborhood, and was denied due to a low credit score caused by negative reporting by the Defendant. Plaintiff was only able to procure temporary housing that did not check credit. This housing was often in as short was three week periods, so the Plaintiff had to move textbooks and furniture several times throughout the semester, missing class and studying to do so. Eventually, Plaintiff found housing for a three month period in a risky part of they city near the airport. Plaintiff struggled to study while airplanes flew over the residence every 60

seconds, disrupting phone and internet connections each time. While living at this residence, Plaintiff's car was vandalized in the driveway. The door handles and locks were broken off in an attempted robbery.

20. In addition to housing and education issues, Plaintiff has also been denied financing to purchase a vehicle. Plaintiff is currently unable to rent vehicles. Plaintiff has been denied the ability to open personal checking accounts at banks. Despite working hard and engaging in a career path with an economic future, this future is curtailed in almost every way possible by the credit harms caused by the Defendant's reporting.

### RESPONDEAT SUPERIOR

21.     The representatives and / or collectors at the Defendant were employees of and agents for the Defendant at all times mentioned herein.

22.     The representatives and / or collectors at the Defendant were acting within the course and scope of their employment at all times mentioned herein.

23.     The representatives and / or collectors at the Defendant were under the direct supervision and control of the Defendant at all times mentioned herein.

24.     The actions of the representatives and / or collectors at the Defendant are imputed to their employer, the Defendant.

### *IV. CAUSES OF ACTION*

#### *NEGLIGENCE*

7

25.     Defendant made misrepresentations with the goal of getting Plaintiff to engage in loans for egregious and unrealistic payback amounts.

26.     Defendant also made misrepresentations to Plaintiff that entering into multiple forbearance payments would benefit her financially.  Not only did these forbearances harm the Plaintiff, they benefitted the Defendant's company for its portfolio, as well as company representatives because each represenative received a financial bonus incentive for each forbearance successfully executed.

27. Defendant used forbearances to modify its adhesion contract several times with no new consideration to Plaintiff.  Defendant henceforth retained unequal bargaining power and increased its net profit gain by intentionally keeping Plaintiff in this extended default status.

28.     Defendant had a duty to act reasonably with Plaintiff would have no reason or allowance to harass Plaintiff purposefully.

29.     Defendant breached this duty by using threatening language and/or intimidations to induce and or scare the Plaintiff into making regular and forbearance payments.  Defendant told Plaintiff consequences of non-payment or delayed payment would include, but weren't limited to, seizure of Plaintiff's personal bank accounts, arrest of Plaintiff, separation of Plaintiff from her family and, representatives showing up unannounced at Plaintiff's place of residence.

30.     Defendant's actions were extreme and continuous in nature with the intent of causing Plaintiff the belief she would be harmed, in order for the Defendant to gain from Plaintiff's induced actions.

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION, ACT 47 U.S.C. §227 ET SEQ.

31.     The hundreds of brute force automated phone calls by representatives of Defendant constitute numerous negligent violations of the TCPA, including but not limited to each of the provisions under 47 U.S.C. § 227 et seq.

32.  Plaintiff's life was significantly disrupted by these calls.  Plaintiff is entitled to an award of $500.00 in statutory damages for each separate call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).  In addition, Plaintiff is also entitled to seek injunctive relief, prohibiting Defendant's violation of the TCPA in the future.

33.     As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

34.     Plaintiff is also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendant in the future.

### FDCPA VIOLATIONS

35.     The acts and omissions of the Defendant and its representatives, employees and/or agents

constitute numerous and multiple violations of the FDCPA, including, but not limited to §1692d

preface, d(2), d(5), §1692e preface, e(2)(A), e(3), e(4), e(5), e(10), e(11) and §1692f preface.

36.     The Defendant's violations are multiple, willful and intentional.

37.     Pursuant to FDCPA section 1692k the Plaintiff is entitled to actual damages, statutory

damages up to $1,000.00, reasonable attorney's fees and costs.

## V. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant.

a.       As a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself $500.00 in statutory damages for each and every call that violated the TCPA or FDCPA.

b.       As a result of Defendant's willful and/or knowing violations of 47 U.S.C. §227(b)(1), Plaintiff seeks for herself treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA or FDCPA.

c.       Injunctive relief prohibiting such violations of the TCPA or FDCPA by Defendant in the

future.

d.       Such other relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury upon all issues and all counts of this Complaint triable as a matter of right.

## CERTIFICATE OF SERVICE

I hereby certify that on April 20th, 2015, I served a copy of the foregoing document with the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record on the Service List below in an authorized manner.

**SERVICE LIST**

PARTRIDGE, SNOW & HAHN, LLP.
40 Westminster St, Ste 1100⯑
Providence, RI 02903
Telephone: 401-861-8200 · f: 401-861-8210
Email: dhm@psh.com

DATED: April 20th, 2015

Respectfully Submitted,

_____
Lauren S. Kruskall
PO Box 418
Dover, MA 02030
Telephone: 617-816-6087
Email: Buki418@aol.com